IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | | |
|---|---|---|
| MITCHELL LEE WALCK, | ) | Cause No. CV 04-55-H-CSO |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| POWELL COUNTY COMMISSIONERS THOMAS | ) | |
| HATCH, DWIGHT O'HARA, GAIL JONES; | ) | |
| GRANITE DEPUTY SCOTT DUNKERSON; | ) | |
| MAJOR THOMAS WOOD, MSP; WARDEN MIKE | ) | |
| MAHONEY, MSP; DEPUTY GARY BENDER, | ) | |
| POWELL CO.; SHERIFF SCOTT HOWARD, | ) | |
| POWELL CO.; CAPT. PAT GEORGE, | ) | |
| POWELL CO.; CAPT. ROBERT GEACH, | ) | |
| MSP; CO. SCOTT CLARK, MSP; CO. | ) | |
| JOSHUA MOORE, MSP; CO. BRUCE MILLER | ) | |
| MSP; UNDERSHERIFF MIKE GRAY, | ) | |
| DEER LODGE; GREG SCOTT; CARL | ) | |
| BECKWITH, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

On November 1, 2004, Plaintiff Mitchell Walck filed this
action under 42 U.S.C. § 1983, alleging violations of his civil
rights. Walck is a state prisoner proceeding pro se. After Walck
was given an opportunity to supplement his Complaint[1] to correct

_____

[1] The Supplement (Court's doc. 6) has been deemed part of
Walck's Complaint (Court's doc. 2). See Order of Aug. 9, 2005

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

certain deficiencies, the Court concluded that service was appropriate.

On October 3, 2005, Defendants Hatch, O'Hara, Jones, Dunkerson, Bender, Howard, George, and Gray ("the County Defendants") moved to dismiss portions of the Complaint on various grounds. On October 12, 2005, Defendant Scott moved to dismiss the Complaint on the grounds that Walck failed to exhaust his administrative remedies. Scott, however, did not give Walck the notice required by Wyatt v. Terhune, 315 F.3d 1108, 1120 n.4 (9th Cir. 2003), and Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998) (en banc). Consequently, on February 8, 2006, the Court did so. Walck's time to respond to the motions to dismiss was extended to February 28, 2006.

At the same time, the Court ordered that Defendants Geach and Moore should be personally served and granted an extension of time to waive service on behalf of Defendants Wood, Mahoney, Clark, B. Miller, and Beckwith.[2] On March 17, 2006, Defendants Wood and Mahoney filed a motion to dismiss, and Defendants Geach, Beckwith, Clark, Moore, and B. Miller filed an Answer.

On April 27, 2006, Walck moved to amend his Complaint and

_____

(Court's doc. 9) at 3, ¶ 1.

[2] A request for an extension of time to waive service was contained within Defendant Scott's waiver of service. See Waiver (Court's doc. 12).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 2

moved to compel the Defendants "to comply to past motions of this Court."  Mot. to Compel (Court's doc. 42) at 1.  Those motions were fully briefed on May 10, 2006.

Two motions filed by Walck – his March 1, 2006, motion for disclosure of the "mutual aid agreement" between Powell County and Montana State Prison and his April 27, 2006, motion to compel – are dealt with in a separate Order.  A Scheduling Order is also issued separately.

This Findings and Recommendation deals with the three defense motions to dismiss and Walck's motion to amend his Complaint.

## I. Walck's Allegations

The Court has rearranged some of Walck's allegations to put them generally in chronological order and has attempted to accurately relate the Supplement to the original Complaint. Although Defendants Geach, Beckwith, Clark, Moore, and B. Miller have not filed a motion to dismiss, all of Walck's allegations are set forth here because they assist in understanding the pending motions.

Walck was arrested on October 31, 2001.[3]  He contends that excessive force was used in executing the arrest.  He asserts that

_____

[3] Although the Court received Walck's proposed Complaint one day after the three-year statute of limitations expired, it will presume, for present purposes, that the date on which Walck signed the Complaint, October 21, 2004, was also the day that he mailed his complaint and so determines his timeliness.  See Houston v. Lack, 487 U.S. 266, 270-72 (1988).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 3

Warden Mike Mahoney agreed to Powell County Sheriff Scott Howard's
request to use employees of the Montana State Prison ("MSP") to
assist at the scene of Walck's arrest.  Walck contends that MSP
staff members Clark, B. Miller, Beckwith, Geach, and Moore were not
deputized to participate.  He claims that these five officers
entered posted private property, see Compl. at 5,[4] where Geach was
the "sole respon[si]ble individual," see Supp. at 3 (emphasis in
original), for shooting Walck with a 40mm plastic bullet.  See
Supp. at 2-3.  Walck claims that Defendant Powell County Sheriff
Scott Howard "orchestrated a physical attack" by Defendant MSP
Officers Clark, B. Miller, and Moore, as well as "a CO. Beckwith
who in fact stood, jumped if you will on my back while pinned to
the floor."  Compl. at 3.  Walck was arrested inside a private
residence.  Walck says that Howard gave the "official order," but
it is not clear whether he means the order for Clark, B. Miller,
Moore, Beckwith, and Geach to enter private property or the order
to Clark, Moore, Beckwith, B. Miller, and perhaps Geach to restrain
or arrest Walck.  See Supp. at 2-3.  Walck also seems to state that
the original order to the Montana State Prison employees to arrest
Walck came from Defendant Wood as well as Mahoney.  See Compl. at
3. Walck also notes that Gray and Dunkerson, as well as Howard and
George, "entered the private residence on false pretenses before

---

[4] Walck did not number the pages of his Complaint.  The Court
has done so.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 4

the physical attack" and that Dunkerson, a Granite County deputy, was out of his jurisdiction in Powell County.  Supp. at 3; see also Compl. at 5.  Walck asserts that "this deliberate use of force" has caused him "significant medical problems," including upper and lower back pain and loss of sleep.  He also states that he has taken Celebrex, ibuprofen, aspirin, and Tylenol for pain relief. See Compl. at 3.

Walck also claims that he was improperly handcuffed for transport to the Powell County Clinic following his arrest.  As a result, the cuffs slipped up on his forearm and cut him.  He required four stitches to close the wound.  He asserts that he complained, during transport, to Defendant Bender, but Bender refused to re-cuff him.  Walck claims he experienced pain and still has a scar from the wound.  Walck was treated at the Clinic and released to the Powell County Jail at about 4:30 p.m.  Compl. at 3. Walck asserts that Howard had a duty to train his deputies "in all phases of securing a[n] arrestee properly."  Supp. at 4.

About thirty minutes after his placement at the jail, Walck avers, Bender entered his cell, pushed and shoved him, used profanity, and called him a name.  Walck states that he had been complaining about the wound caused by the handcuffs and that Bender's actions "caused more pain and suffering to say the least." Walck filled out a grievance form and told both Sheriff Howard and Powell County Attorney Christopher Miller about Bender's actions.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 5

Attorney Miller refused to prosecute Bender.  Walck's attorney in the criminal case and apparently Defendant Pat George copied Walck's grievance form.  Compl. at 3.  Walck's Supplement explains that he mentions Attorney Miller only as background and that he "has nothing to with my Complaint."  Supp. at 4.

On November 5, 2001, Walck claims that Sheriff Howard, while escorting Walck to the shower, verbally threatened to "blow [him] away."  Walck claims this is a direct quotation and that it was witnessed by George.  Compl. at 5.  In his Supplement, he explains that the remark was an intentional display of force meant to cause him great fear and that it caused him "tremendous immediate fear for my life."  See Supp. at 5.

At about 7:30 p.m. on the same day, Walck was transported from Powell County to the Ravalli County Detention Center.  He alleges that he was again handcuffed improperly, this time by Howard and George, and the cuffs rubbed the same place where Walck had received stitches.  Howard and George refused to adjust the cuffs. At the end of a three-hour trip, Walck's left arm was swollen to twice its normal size.  Due to the pain, Walck passed out at the Ravalli County Detention Center and was taken to the hospital for treatment and x-rays.  Compl. at 4.  Walck contends that, after this incident, a "black cuff measuring box" was used by Howard and his deputies to properly secure him and that this constitutes an admission of previous maltreatment.  Supp. at 4-5.  In his

Supplement, he states that he and his wife were transported to the Ravalli County Detention Center because both were considered management problems.  Id. at 5.

In his Complaint, Walck concludes that Sheriff Howard is "unfit to be a public servant" and states that he holds Howard and the Powell County Commissioners responsible for the injuries and maltreatment he has received.  Compl. at 5.  He does not mention the Powell County Commissioners in his Supplement, and dropped them from the caption of the Supplement.  See Supp. at 1.

Although Walck was instructed to limit his Supplement to only those allegations discussed in the Order of April 8, see Order (doc. 3) at 11, ¶ 2, he adds allegations against Greg Scott, an MSP physician assistant.  Walck alleges that Scott ignored his daily pain by discontinuing Walck's Celebrex and telling him to take over-the-counter medicine instead, "prior to being placed back on Celebrex."  See Supp. at 2.  Walck does not say how long he was unable to use Celebrex or whether he took the medicine offered by Scott instead.

For his relief, Walck seeks medical treatment at the Montana State Prison in the form of a current x-ray and Celebrex; $3,000,000.00 in damages "to be paid in full at settlement, pending out of court adjudication";[5] ownership and/or a 99-year lease of

---

[5]    Walck's Supplement demands a jury trial.  See Supp. (Court's doc. 6) at 5.

the cannery building on the MSP grounds, with exemption from state and local taxes; and ownership and/or a 99-year lease on the ranch located in Jens where he was shot.  Compl. at 4.

## II. Walck's Motion to Amend

On April 6, 2006, this Court issued an Order denying Walck's request for additional time to file a response to the Answer of Defendants Geach, Beckwith, Clark, Moore, and B. Miller.  Referring to that Order, on April 27, 2006, Walck filed a motion to amend his Complaint, asking, rhetorically, "How can pleadings be closed with respects to above listed Defendants.  I have no motion for dismiss on above Defendants."  Pl.'s Mot. to Amend (Court's doc. 41) at 1.

As the Court explained on April 6, the Federal Rules of Civil Procedure do not allow a plaintiff to file a response to an Answer. See Fed. R. Civ. P. 7(a).  As was stated at that time, the pleadings are closed.  They remain so.  While the Court is mindful of the federal courts' liberal amendment policy, there is no reason to allow amendment where the proposed amendment adds nothing to the existing pleading.  Walck's proposed amended complaint adds nothing to his existing pleading.  As the County Defendants point out, there is no evidence before the Court at this stage of the proceedings, so it is not necessary to amend the Complaint to conform to the evidence, as Walck suggests.  The motion to amend should be denied.

## III. Scott's Motion to Dismiss

Scott contends that Walck did not properly pursue an administrative grievance regarding his Celebrex prescription. This Court may not entertain complaints from prisoners who have not exhausted their internal administrative remedies. 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought ... until [the prisoner's] administrative remedies ... are exhausted." See also Porter v. Nussle, 534 U.S. 516, 524-25 (2002); Booth v. Churner, 532 U.S. 731, 741 (2001). Exhaustion is simply "an indispensable requirement." McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam). See also Woodford v. Ngo, __ U.S. __, __, 126 S.Ct. 2378, 2383 (2006) ("proper exhaustion of administrative remedies is necessary.").[6]

Ninth Circuit precedent requires exhaustion of administrative remedies *before* suit is filed. In McKinney, the court considered "whether a district court must dismiss an action involving prison conditions when the plaintiff did not exhaust his administrative remedies prior to filing suit but is in the process of doing so when a motion to dismiss is filed." 311 F.3d at 1199. The court joined the First, Second, Third, Seventh, Tenth, Eleventh, and D.C.

_____

   [6] Woodford interprets the administrative exhaustion provision of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), to require timely and proper exhaustion of administrative remedies in the same sense that timely and proper exhaustion of state judicial remedies is required in a habeas case. Consequently, inmates must file grievances over any incident that they might eventually wish to pursue in federal court.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 9

circuits in holding that 42 U.S.C. § 1997e(a) "requires exhaustion *before the filing of a complaint* and ... a prisoner does not comply with this requirement by exhausting available remedies during the course of the litigation."   Id. (emphasis added).

In support of his motion to dismiss, Scott adduces affidavits from Kenneth Cozby, the Grievance Coordinator at Montana State Prison, and Anita Larner, an investigator at Montana State Prison. Cozby avers that Walck filed 226 grievances between his placement at MSP on May 17, 2002, and the date of the affidavit, October 12, 2005.  On May 20, 2002, he filed his first three grievances.  While there were medical-related grievances, none of them had to do with Walck's Celebrex prescription.  See Scott's Mot. to Dismiss and Br. in Supp. (Court's doc. 16), Cozby Aff. at 2, ¶¶ 1-10.  Larner avers that she reviewed all the forms filed by Walck that are titled "Inmate Medical/Dental Requests to Staff Member."   These forms contain requests by inmates that particular medical issues be addressed.  Larner states that Walck filed 18 such forms relating to Celebrex, but he did not file any grievances.  See Scott's Mot., Larner Aff. at 2, ¶¶ 2-5.  Additionally, the Prison's grievance policy, Policy No. MSP 3.3.3, attached to Cozby's Affidavit, specifically identifies medical issues as "grievable" issues.  See Policy No. MSP 3.3.3 at 3, Part IV.B(5).

The Court specifically advised Walck that he was entitled to submit evidence in response to Scott's motion.  See Notice and

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 10

Warning to Plaintiff (Court's doc. 19) at 2-3.  In response, Walck reiterates the allegations of his Complaint, as supplemented, and claims that "the grievance system was never mentioned upon intake with Mr. Scott."  He also claims that the forms titled "Inmate Medical/Dental Request to Staff Member" are not properly called "kites," as Larner asserted in her affidavit.

Walck seems to imply that the requirement for administrative exhaustion cannot be applied against him, because Scott did not mention the grievance system.  However, there is no dispute that Walck knew about the grievance procedure.  He filed 226 grievances, including three on the third day of his incarceration at MSP.  It is of no importance whether "Inmate Medical/Dental Requests" are "kites."  The point is that Walck must exhaust his administrative remedies prior to filing suit.  He did not do so.  Defendant Scott is entitled to dismissal.

**IV. Motion to Dismiss Defendants Wood and Mahoney**

Wood and Mahoney move for dismissal on the grounds that Walck's only allegation against them is that they consented to the deployment of MSP staff members Clark, B. Miller, Beckwith, Geach, and Moore in the effort to arrest Walck.  They assert that Walck cannot maintain a claim under 42 U.S.C. § 1983 because there is no *respondeat superior* liability under § 1983.

In response, Walck reiterates his allegations and contends that "under some circumstances prisoner 'inmates' can join both

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 11

civil rights claims and tort claims in the same lawsuit in federal court with absolute reference to the respondant [sic] superior re: 1983 42 U.S.C."  Pl.'s Resp. to Wood and Mahoney Mot. to Dismiss (Court's doc. 40) at 2.

Walck alleges, in part, that "Montana State Prison correctional staff because someone said this, that or thee [sic] other entered posted private property on false pretenses, accusations."  Compl. at 5.  He also alleges that the order to "respond" to the scene came from Wood and Mahoney.  Id. at 3; see also Supp. at 2.  If the officers' entry on private property was unlawful, and if Wood and Mahoney ordered the officers to enter, then they might have caused or personally participated in causing a violation of Walck's rights under the Fourth Amendment.  See, e.g., Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978); Stevenson v. Koskey, 877 F.2d 1435, 1438-39 (9th Cir. 1989). Although Walck's allegations are less than clear, he states a claim on which relief might be granted against Defendants Wood and Mahoney.  Their motion to dismiss should be denied.

**V. County Defendants' Motion to Dismiss**

The County Defendants move for their dismissal on various bases.

**A. County Commissioners**

The Powell County Commissioners, Hatch, O'Hara, and Jones, move for their dismissal on the grounds that Walck dropped their

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 12

names from the caption of the Supplement he filed on May 3, 2005, and that the Complaint fails to state a claim against them.  Walck responds that his omission of their names from the caption of his Supplement was an error and they are "directly accountable for whom they employ fire/hire in an official capacity.  Municipal officials act under color of state law."  Pl.'s Resp. to County Defs.' Mot. to Dismiss (Court's doc. 22) at 2.

Neither Walck's Complaint nor his Supplement alleges any act performed by a County Commissioner in connection with his claims. His sole claim is that the County Commissioners hired an unidentified person or persons who eventually appeared at the scene of his arrest.  That does not suffice to state a claim under 42 U.S.C. § 1983.  Walck does not allege facts in support of any claim for negligent hiring.  Even if he did, this Court should still dismiss the claim, because the County Commissioners' liability would raise factual and legal questions significantly different from those regarding the officers' liability, and determining both sets of questions at the same time before the same jury poses a substantial risk of unfairly prejudicing the County Commissioners. Consequently, the Court should decline to exercise supplemental jurisdiction over any negligence claim, pursuant to 28 U.S.C. § 1367(c)(4).   Defendants Hatch, O'Hara and Jones should be dismissed.

**B. Handcuffing Injuries**

Walck alleges that Defendant Bender refused to adjust the handcuffs on the 20-minute, 30-mile drive from the scene of Walck's arrest to the Powell County Hospital.  On arrival at the hospital, he received four stitches to his arm to close the injury caused by the handcuffs.  See Compl. at 3, Supp. at 3.  He also alleges that Defendants Howard and George refused to adjust his handcuffs when he complained of pain on the hour-long drive from the Powell County Jail to the Ravalli County Jail.  Compl. at 4; Supp. at 4.

### 1. First Incident

Defendants assert that Walck fails to state a claim under 42 U.S.C. § 1983 based on the first occasion on which handcuffs cut into his wrist and caused significant pain.[7]  Walck emphasizes that Bender did not handcuff him originally and emphasizes that he only claims that Bender was negligent in failing to recuff him.

Defendants assert that there is no difference between Walck's Complaint and his Supplement with respect to his allegations against Bender, but there is.  Walck's Supplement alleges:

> Deputy Gary Bender refused to re-cuff me properly when I complained and saw the blood flowing for twenty minutes as I was being transported to Deer Lodge.

Supp. at 3.  Grammatically, the phrase "saw the blood flowing for twenty minutes" refers to Walck, not Bender.  However, in his

---

[7] The Court does not understand the County Defendants to have moved for dismissal based on the second occasion of injury from improper handcuffing.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 14

Complaint, Walck says his hands were cuffed behind his back and he "couldn't see exacting [sic] what was occurring." <u>See</u> Compl. at 3. Therefore, liberally construing the pleading, Walck alleges that Bender "saw the blood flowing for twenty minutes." That allegation is sufficient to support an inference that Bender might have acted with deliberate indifference to a serious complaint of a medical nature. Bender should not be dismissed from the handcuffing claim.

Walck also alleges that Howard is liable in negligence for failing to properly train Bender regarding the proper way to restrain an arrestee. Again, while Walck's allegations are minimal, they suffice to state a claim on which relief might be granted. He claims that Howard had a duty, as Sheriff of Powell County, to train his deputies about the proper use of handcuffs. Since other claims against Howard should go forward, the Court should exercise supplemental jurisdiction over Walck's negligent failure-to-train allegations against Howard.

## 2. Second Incident

As to the second incident, while Walck's Supplement does not vary significantly from his Complaint, the Court's primary concern in its Order of April 8, 2005, was Walck's failure to allege facts sufficient to support a § 1983 claim as the first handcuffing. Defendants George and Howard allegedly knew that Walck had a previous handcuffing injury, so their refusal to adjust his handcuffs in the second incident might support an inference of

deliberate indifference.   Neither Howard nor George should be dismissed.

## C. The Shooting

Defendants claim that, because Walck alleges that Geach was "the sole respon[si]ble individual" who shot him, the County Defendants should be dismissed.

Again, there is a difference between the Complaint and the Supplement.  In the Supplement, Walck alleges that "I was shot by the Captain Geach on the order of Sheriff Scott Howard."  Supp. at 2.   If Geach's shooting of Walck was excessive force, and if Sheriff Howard ordered the shooting, Howard might have personally caused or participated in causing a violation of Walck's Fourth Amendment rights.  Defendant Howard should not be dismissed.

## D. Grievances and Failure to Prosecute

Defendants ask the Court to dismiss Howard and Powell County Attorney Christopher Miller regarding their failure to take action on Walck's grievance against Bender for assaulting him at the Jail. Walck's Supplement expressly disavows any intention to hold Miller liable.  See Supp. at 4 ("Mr. Miller has nothing to do with my Complaint, merely telling the facts").  Attorney Miller is not, in fact, named as a Defendant, though CO B. Miller of the Montana State Prison is.

However, the Court must revisit its conclusion in the Order of April 8, 2005, regarding the lack of any theory of liability

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 16

against Howard based on his failure to respond in any way to Walck's grievance regarding Bender's alleged assault.  Officials in policymaking positions may be liable under 42 U.S.C. § 1983 for failing to rectify grievances if their inaction amounts to a policy condoning violation of the right in question.  See Gomez v. Vernon, 255 F.3d 1118, 1127 (9th Cir. 2001).  Although it is not clear how Walck informed Howard of the assault, Walck clearly alleges that he told Howard about it.  See Compl. at 3.  That is sufficient to go forward under § 1983.  The grievance claim against Howard must go forward.

### E. Verbal Threats

Defendants contend that Walck's claim against Howard for threatening to "blow [him] away" fail to state a claim.  Compl. at 5.  Walck's Supplement alleges that Howard was armed and behind Walck when the statement was made and that the comment was intended to cause "great fear."  Supp. at 5.

Although, generally speaking, "it trivializes the [E]ighth [A]mendment to believe a threat constitutes a constitutional wrong," Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (per curiam), Walck points out that the threat here was not made within a prison facility, where the guards typically do not carry firearms, as in Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), and, presumably, in Gaut.  This is a close call.  However, the closeness of the call is a reason not to dismiss the claim but,

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 17

instead, to allow the parties to flesh out the circumstances. This claim should not be dismissed at this stage of the proceedings.

### F. Dunkerson, Gray, and "Other" County Defendants

Defendants argue that the only allegation against Dunkerson is that he acted "out of his departmental jurisdiction" and, as to Gray, the only claim is that he "entered posted private property on false pretenses." If the arrest itself was illegal, and if Dunkerson, Gray, and others participated in the arrest, it is possible that each of those individuals is liable under § 1983. For the same reasons that Wood and Mahoney are not entitled to dismissal at this point, neither are Dunkerson, Gray, or the other County Defendants who participated in the arrest.

### G. Relief

Defendants rightly point out that Walck may not obtain title or a leasehold interest in State property as a result of this action. Nor may he obtain a property interest in the ranch where the arrest took place. If he is successful in obtaining relief, it is up to the Defendants to decide how to pay his claim for money damages; that is not the Court's responsibility. Nor will the Court order that he be put on Celebrex or obtain an x-ray, since his claim against Defendant Scott does not survive. His first, third, and fourth requests for relief should be denied.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1.   Walck's motion to amend the Complaint (Court's doc. 41) should be DENIED.

2.   Defendant Scott's motion to dismiss (Court's doc. 16) should be GRANTED and Scott should be DISMISSED.

3.   Defendant Wood's and Defendant's Mahoney's motion to dismiss (Court's doc. 33) should be DENIED.

4.   The County Defendants' motion to dismiss (Court's doc. 14) should be GRANTED IN PART as follows:

    a.   County Commissioners Hatch, O'Hara, and Jones should be DISMISSED for failure to state a claim under 42 U.S.C. § 1983 and the Court should decline to exercise supplemental jurisdiction over any claim Walck may have made against them under state law, pursuant to 28 U.S.C. § 1367(c)(4);

    b.   Walck's first, third, and fourth requests for relief should be DENIED.

5.   The County Defendants' motion to dismiss should be DENIED in all other respects.

The Clerk of Court shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties.   The parties are advised that, pursuant to 28 U.S.C. § 636, any objections to these findings must be filed or delivered to

prison authorities for mailing within twenty (20) calendar days after the entry date reflected on the Notice of Electronic Filing, or objection is waived.

Walck must immediately notify the Court of any change of address.  Failure to do so may result in dismissal of this case without further notice.

DATED this 26th day of July, 2006.

/s/ Carolyn S. Ostby
Carolyn S. Ostby
United States Magistrate Judge

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 20