IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | | |
|---|---|---|
| MITCHELL L. WALCK, | ) | Cause No. CV 04-55-H-DWM-RKS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| GRANITE DEPUTY SCOTT | ) | |
| DUNKERSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

On November 1, 2004, Plaintiff Mitchell Walck filed this action alleging civil rights

violations under 42 U.S.C. § 1983.  Plaintiff is a state prisoner proceeding pro se and in forma

pauperis.  He alleges that the Defendants exceeded their authority and trespassed on private property

in arresting him, used excessive force in effecting his arrest, and twice used excessive force or were

deliberately indifferent to his serious medical needs with respect to their manner of handcuffing him

for transport to detention facilities.  The Court has jurisdiction over the action pursuant to 28 U.S.C.

§ 1331.

On February 5, 2007, Defendants Gary Bender, Scott Dunkerson, Mike Gray, Scott Howard,

and Pat George ("the County Defendants") filed a motion for summary judgment and brief in support

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

("County Br."), along with a Statement of Uncontroverted Facts ("County SUF").[1]  They also gave Plaintiff the notice required by D. Mont. L.R. 56.2 and Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998) (en banc).  On the same day, Defendants Carl Beckwith, Scott Clark, Robert Geach, Bruce Miller, Joshua Moore, Thomas Wood, and Mike Mahoney ("the MSP Defendants") also filed a motion for summary judgment, brief in support ("MSP Br."), and Statement of Uncontroverted Facts ("MSP SUF"), as well as the required Rand notice.

On March 20, 2007, Plaintiff filed a brief in response ("Pl. Resp.") and a separate response to each affidavit produced by the Defendants.  On March 29, 2007, the Defendants filed reply briefs.

**I. Summary Judgment Standards**

A party is entitled to summary judgment if that party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis of its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of any genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

---

[1]  The County Defendants' first two Statements were stricken because they did not comply with the Court's formatting requirements for electronic filing.  The paper originals of the documents in question were submitted to the Clerk of Court, and the Clerk filed them correctly on February 9, 2007.  The filing difficulty had no effect on the timeliness of service on the Plaintiff, since he received paper documents.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 2

Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248. The non-moving party may do this by use of affidavits (including his own), depositions, answers to interrogatories, and admissions. Only disputes over facts that might affect the outcome of the suit under the governing law are "material" and will properly preclude entry of summary judgment. See id.

At the summary judgment stage, the judge's function is not to weigh the evidence or determine the truth of the matter, but to determine whether there is a genuine issue for trial. However, if the evidence is merely colorable or is not significantly probative, summary judgment may be granted. See id. at 249-50.

> The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

Id. at 252.

In civil rights cases and in the context of a motion for summary judgment where a litigant is proceeding pro se, the court has an obligation to construe pro se documents liberally and to afford the pro se litigant the benefit of any doubt. Erickson v. Pardus, ___ U.S. ___, 127 S. Ct 2197, 2200 (2007) (per curiam); Baker v. McNeil Island Corrections Ctr., 859 F.2d 124, 127 (9th Cir. 1988).

## II. MSP Defendants' Motion for Summary Judgment

Against the MSP Defendants, Walck contends that they lacked authority to assist in his arrest

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 3

on private property in Jens, Montana, well away from Montana State Prison.  He also contends that they trespassed and used excessive force in effecting his arrest.

### A. Undisputed Facts

The following facts are not disputed by admissible evidence.[2]  On October 30, 2001, Tom Maclay saw a trespasser riding a bicycle on the Jack Booker Ranch, which Mr. Maclay claims was his property.  Mr. Maclay told the bicyclist that he was trespassing and that law enforcement would be called if he was seen on the property again.  See Maclay Aff. at 2, ¶¶ 1-3.

The next day, Mr. Maclay's ranch foreman told Mr. Maclay that someone had broken into a trailer near a house and some weapons were missing.  It appeared that whoever had broken into the trailer might still be on the property or in the house.  Someone called the authorities.  Id. ¶ 4.

Defendant Gray, Powell County Undersheriff, and Defendant Dunkerson, a deputy sheriff in Granite County, responded to the scene.  Mr. Maclay went into the house with them.  One of the officers ordered anyone who was in the house to "come out where they could be seen."  A woman came out of one room.  She said there was a man still in the room and he had a gun and would use it.  The woman was arrested and taken outside.  Mr. Maclay left the premises.  The man in the room was later identified as Plaintiff.  He was the bicyclist Mr. Maclay had seen the previous day.  See Maclay at 2, ¶¶ 5-6; Pl. Resp. Exs. 10, 11 (discovery responses of Defendants Dunkerson and Gray).

Montana Highway Patrol Officer Jade Shope was called to the scene at about 1:20 in the afternoon.  He was told that Plaintiff had already fired one shot.  Plaintiff repeatedly came out of the

---

[2]  All of the affidavits cited herein are attached either to the MSP Defendants' Statement of Uncontroverted Facts (doc. 88) or the County Defendants' Statement (doc. 94).  Defendant Howard submitted one affidavit for the MSP Defendants and one for the County Defendants.  As explained below, see n.10, the Howard Affidavit submitted by the County Defendants cannot be considered.

house, throwing things and yelling at the officers on the scene.  On one occasion he emerged from the house with a large knife in his hand, waved it at the officers, re-entered the house, and fired another shot.  See Shope Aff. at 2, ¶¶ 1-3.

At some point, Defendant Howard, the Powell County Sheriff, was notified by dispatch that an armed suspect had barricaded himself inside a house at the Jack Booker Ranch and that shots had been fired inside the house.  Defendant Howard contacted Defendant Mahoney, the Warden at Montana State Prison, to request the assistance of the Montana State Prison Special Response Team ("SRT") in Deer Lodge.  The SRT, which included Defendants Beckwith, Clark, Geach, Miller, and Moore, was called together at about 2:30.[3]  Defendant Dunkerson, a Granite County Deputy Sheriff, was also present at the scene.  See MSP Howard Aff. at 2, ¶¶ 2-4, 10; Miller Aff. at 2, ¶ 3.

When SRT Captain Geach arrived on the scene, he advised Sheriff Howard that, if Plaintiff continued to come out of the house, he could fire an "exact impact munition" at his thigh to impede and distract him, thus enabling the SRT to rush forward and subdue him.  See Geach Aff. at 2, ¶ 8.  Sheriff Howard agreed and gave the order for the use of that amount of force.  See MSP Howard Aff. at 2, ¶ 8.  The SRT, along with Officer Shope, positioned itself behind a barn.  At about 3:00 p.m., when Plaintiff emerged from the house, Captain Geach yelled at Plaintiff to get down on the ground.  Plaintiff turned "and appeared to consider re-entering the house."  Captain Geach fired and hit Plaintiff in the calf with a beanbag or a plastic bullet.  See Geach Aff. at 2-3, ¶ 10; Shope Aff. at 2, ¶ 4; Pl. Resp. at 3, ¶ 21; Foster Aff. Ex. at 1-2 (hospital records).  Plaintiff stumbled and attempted to regain his feet, but Defendants Geach, Moore, and Clark, as well as Officer Shope, seized him and

---

[3] Defendant Beckwith avers that the time was 1:30.  See Beckwith Aff. at 2, ¶ 3.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 5

placed him under arrest.  See Geach Aff. at 3, ¶ 10; Beckwith Aff. at 2, ¶ 8; Clark Aff. at 2, ¶ 7.

Plaintiff claims that someone jumped on his back after he was down, but the contemporaneous

medical record does not reflect any report of back pain or injury.  Compare Pl. Resp. at 3, ¶ 25, with

Foster Aff. Ex. at 1-2.

 After his arrest, Plaintiff was taken to the Powell County Hospital.  He arrived there at 3:40

p.m.  See Foster Aff. Ex. at 1.  It takes about 30 minutes to travel from the Jack Booker Ranch to

Deer Lodge.  See Pl. Resp. at 4, ¶ 32.  The only wound for which Plaintiff was treated was a

laceration, 2.5 to 3 centimeters in size, on his left forearm.  He received four stitches.  See id. Ex.

4; Foster Aff. Ex. 1-2.

### B. Authority to Act[4]

 The MSP Defendants assert that they responded to the County Defendants' request for

assistance and so were authorized to participate in Plaintiff's arrest.  Plaintiff takes issue with

Defendants' failure to prove the existence of a written agreement between Powell County and MSP

at the time of his arrest.  However, state law provides that an explicit agreement is required only as

between Montana officers and those of "any other state or the United States."  Mont. Code Ann. §

44-11-304(1) (2001).

 Entirely apart from any written or customary mutual aid agreements between Powell County

and MSP, Mont. Code Ann. § 46-6-402 provides:

> (1)  A peace officer making a lawful arrest may command the aid of persons 18 years
> of age or older.

---

[4]  The Court will assume, for the sake of argument, that an arrest by unauthorized persons makes an arrest unreasonable, in violation of the Fourth Amendment as applied to the States through the Fourteenth.  See Mapp v. Ohio, 367 U.S. 643, 655 (1961).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 6

(2)  A person commanded to aid a peace officer in making an arrest:
      (a) has the same authority to arrest as that officer; and
      (b) is not civilly liable for any reasonable conduct in aid of the officer.

If Powell County could have called on the assistance of any passing 18-year-old, it certainly could call on MSP's Special Response Team.  The MSP Defendants were fully authorized to assist in Plaintiff's arrest.

**B. Trespass**

The MSP Defendants argue that Plaintiff has no standing to raise a constitutional objection to their entry onto the ranch property.  See MSP Br. at 7.[5]  However, Plaintiff's "trespass" theory might also be understood as a claim that his arrest was wrongful because he had the right to be in the house that was the scene of his arrest.  Plaintiff has standing to contest his own arrest.

Nonetheless, the undisputed evidence shows that no constitutional violation occurred.  A warrantless arrest is lawful under certain circumstances, including where there is probable cause to believe a crime has been committed and exigent circumstances make it impracticable to obtain a warrant.  See, e.g., Fisher v. City of San Jose, 475 F.3d 1049, 1058 (9th Cir. 2007).  Probable cause is assessed in a nontechnical, common-sense way, based upon the totality of the circumstances.  See Illinois v. Gates, 462 U.S. 213, 238 (1983).  "[A] situation is exigent ... if a warrant could not be obtained in time to effectuate the arrest *safely* – that is ... without casing a delay dangerous to the officers or to members of the public."  Id. at 1058-59; see also id. at 1059 n.6.[6]

---

[5]  Plaintiff did not, in fact, own the ranch.  He requests that it be given to him – or leased to him for a term of 99 years in exchange for one dollar, American – if he prevails in this lawsuit.  See Compl. (doc. 2) at 4.

[6]  Only federal law is relevant because a § 1983 claim can lie only for a violation of the federal Constitution or federal law.  See, e.g., Ove v. Gwinn, 264 F.3d 817, 824 (9th Cir. 2001); Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), overruled on other grounds by Sandin v. Conner, 515 U.S. 472, 483-84 (1995).  Therefore, the Court will not consider whether Defendants complied with state standards governing probable cause or warrantless arrests.

Plaintiff claims that Mr. Maclay has not provided sufficient evidence that he owned the Jack Booker Ranch,[7] but he does not claim that the Defendants had any reason to disbelieve what Mr. Maclay told them at the time.  See Pl. Resp. to Howard Aff. at 1, ¶¶ 2-4 (stating, inter alia, that "the sheriff was 'DUPED'").  Mr. Maclay avers that he contacted law enforcement and told them there was a trespasser on his property, that a trailer belonging to his ranch foreman had been broken into and some weapons taken, and that the trespasser might still be in a house on his property.  That was ample information for the Defendants to rely on in deciding to go out to the property.  When they arrived, they entered the house with the consent of the person they reasonably believed to be the owner.  At least one of them spoke with a woman who said that Plaintiff was still in the house, was armed, and refused to come out.  Sheriff Howard also received a report that a shot was fired inside the house.  That information, coupled with what they already knew of the weapons theft and Plaintiff's status as a trespasser, gave them probable cause to believe that Plaintiff had broken into the trailer, stolen weapons, and intended to repel by potentially lethal force anyone who attempted to "evict" him.  Unlike the situation in Fisher, which went on for many hours, here there were also exigent circumstances, because Plaintiff was armed and belligerent and apparently had already fired at least one shot.

In light of these facts, which the undisputed evidence shows that the Defendants could reasonably believe to be true, the arrest was lawful.  Plaintiff's "trespass" theory has no merit.

**C. Excessive Force in Effecting Arrest**

A claim that excessive force was used in the course of making an arrest is analyzed under the

---

[7]  He does so by claiming, with no supporting evidence, that a "Mr. Phillips of Drummond," or formerly of Drummond, owned the property.  He does not state the basis for his knowledge.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 8

Fourth Amendment's standard of objective reasonableness.  See, e.g., Graham v. Connor, 490 U.S. 386, 394 (1989); Tennessee v. Garner, 471 U.S. 1, 7-22 (1985); Robinson v. Solano County, 278 F.3d 1007, 1013-15 (9th Cir. 2002) (en banc).  The "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation."  Graham, 490 U.S. at 396-97.  The Court must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id. at 397.  Because the inquiry is an objective one, however, the officers' intent is irrelevant.  "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." Id.

There is no evidence in the record before the Court that could support a judgment in Plaintiff's favor.  Defendants were far from a judge and were confronted with an armed, belligerent man who was inside a house that was not his and who was willing to fire a weapon.  About ninety minutes after the first officers arrived on the scene, Plaintiff was disarmed with non-lethal force that caused him no harm or injury.  The Defendants' response was appropriate and professional.

Plaintiff claims that someone jumped on his back.  Plaintiff's (unauthenticated) evidence in support of a back injury is dated 2002 or much later and reflects no injury,[8] and, in any case, his

_____

[8] The MSP Defendants point out that Plaintiff refers to two jailhouse altercations following the incident at the Ranch.  See Pl. Resp. at 4, ¶¶ 40, 42; id. at 5, ¶ 46; MSP Reply at 4.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 9

affidavit is based solely on his personal "belief," which is not sufficient to support a finding that one of the Defendants caused his unsubstantiated injury by jumping on his back. <u>See</u> Pl. Resp. at 6, ¶ 65; <u>id</u>. Ex. 6 at 1-2. The medical record of Plaintiff's admission to the Powell County Hospital immediately following the incident does not reflect that Plaintiff complained of any back injury. Neither does the medical record of Plaintiff's admission to Marcus Daly Hospital in Hamilton, Montana, on November 5, 2001. <u>See id</u>. Ex. 5 at 1-3.

Officer Shope, who is not a defendant, avers that he "fell on top of" Plaintiff while pushing him down. <u>See</u> Shope Aff. at 2, ¶ 5. Plaintiff disputes that anyone pushed him and insists that Defendant Moore "jump[ed] on my back as I was pinned down," said that Plaintiff had a knife, and held Plaintiff with his knee while the others handcuffed him. <u>See</u> Pl. Resp. at 3, ¶ ¶ 24-27. Regardless of whom Plaintiff believes to be responsible, this evidence admits of two conclusions, both favorable to the Defendants. Quite possibly no one "jumped" on Plaintiff's back at all. However, even if someone did, the undisputed evidence shows that it was reasonable for that person to be concerned about Plaintiff having a knife – Officer Shope had seen one in his hand previously – and it was likewise reasonable for that person to use his knee to hold Plaintiff down while he was handcuffed. Although physical injury is not an element of an excessive force claim, <u>see, e.g.</u>, <u>Robinson</u>, 278 F.3d at 1014, the absence of a physical injury under the circumstances of this case necessarily means that no probative evidence suggests that anyone used *excessive* force by jumping on Plaintiff's back. <u>See</u> <u>Jackson v. City of Bremerton</u>, 268 F.3d 646, 651 n.1 (9th Cir. 2001); <u>Arpin v. Santa Clara Valley Transp. Agency</u>, 261 F.3d 912, 922 (9th Cir. 2001).

Plaintiff's claim that the MSP Defendants used excessive force in effecting his arrest lacks

merit.

### D. Conclusion

The MSP Defendants – Mahoney, Wood, Beckwith, Clark, Geach, Miller, and Moore – are entitled to summary judgment in their favor on all claims against them.

## IV. County Defendants' Motion for Summary Judgment

### A. Booker Ranch Claims

For the reasons set forth above as to the MSP Defendants, County Defendants Howard, Gray, and Dunkerson are entitled to judgment as to all of Plaintiff's claims regarding matters that occurred at the Jack Booker Ranch.  Because there are no other claims against Defendants Gray and Dunkerson, they are entitled to summary judgment in their favor.

### B. First Handcuffing

Plaintiff claims that he was improperly handcuffed for transport to the Powell County Hospital following his arrest and, as a result, about seven to ten minutes into the thirty-minute drive, see Pl. Resp. at 4, ¶ 32, the cuffs slipped back and forth on his forearm and cut him.  He asserts that he complained, during transport, to Defendant Bender, but he refused to stop.  Plaintiff also asserts that Sheriff Howard had a duty to train his deputies "in all phases of securing a[n] arrestee properly." Pl. Supp. (doc. 6) at 4; Compl. at 3.  The latter contention might be addressed either as a § 1983 claim or as a state-law negligence claim.  See Findings and Recommendation (doc. 52) at 14-15; Pl. Supp. at 3.

#### 1. § 1983 Claim

According to Plaintiff, the handcuffs began to cause pain at least 7 to 10 minutes after they

were applied, with no further action on the part of any officer, because they were "slipp[ing] back and forth along the arm."  Pl. Resp. at 4, ¶ 36.  By the time Plaintiff was being transported to the Powell County Hospital, the arrest itself was complete.  Plaintiff's handcuffing claim is, in essence, a challenge to the conditions under which he was transported to the hospital, not to the manner of his arrest or to officers' use or threatened use of physical force.

Nonetheless, "the Fourth Amendment sets the applicable constitutional limitations on the treatment of an arrestee detained without a warrant up until the time such arrestee is released or found to be legally in custody based upon probable cause for arrest." Pierce v. Multnomah County, 76 F.3d 1032, 1043 (9th Cir. 1996); see also Fontana v. Haskin, 262 F.3d 871, 879 (9th Cir. 2001) ("the trip to the police station is a continuing seizure during which the police are obliged to treat their suspects in a reasonable manner.") (internal quotation marks omitted); Robins v. Harum, 773 F.2d 1004, 1010 (9th Cir. 1985).  Therefore, as at the scene of the arrest, the inquiry is entirely objective, and a defendant's motive or intent is not relevant.  See Graham, 490 U.S. at 397.  Again, the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97. "[W]hether the suspect poses an immediate threat to the safety of the officers or others" is also highly relevant.  Id. at 397.

In support of summary judgment, Defendant Bender avers:

Mr. Walck complained loudly about a variety of matters during the drive to the hospital, including his handcuffs.  I did not stop on the approximately 30 minute trip from the Booker Ranch to the Powell County Hospital because in my opinion it was not safe to do so.  Most of the trip was via the interstate highway and Mr. Walck was

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 12

very agitated.

Bender Aff. at 2, ¶ 5.  There is documentary evidence to support this characterization of Plaintiff's behavior.  When he arrived at the Powell County Hospital, Plaintiff was described as "alert, uncooperative, and belligerent."  Foster Aff. Ex. at 2; see also Geach Aff. at 2, ¶ 7; Shope Aff. at 2, ¶¶ 2-3.

While Plaintiff describes the averment that he was "agitated" as something that indicates "arrogance" on Defendant Bender's part, see Pl. Resp. at 4, ¶ 37, he does not produce any admissible evidence to refute the Defendants' well-supported claim that he was agitated.  He states that there was another witness in the car, see id. ¶ 33, but he does not even identify that person, much less produce testimony from him or her.  Plaintiff has had ample time for discovery and is unable to support his claim.  Defendants Bender and Howard are entitled to summary judgment as to Plaintiff's § 1983 claim because all the evidence before the Court shows that Defendant Bender's decision not to stop until he reached the hospital was reasonable under the circumstances.

### 2. Negligence Claim

"A negligence cause of action entails four elements – duty, a breach of that duty, causation and damages."  Massee v. Thompson, 90 P.3d 394, 403 ¶ 41 (Mont. 2004).  All four elements must be shown if Plaintiff is to prevail.  See Eklund v. Trost, 151 P.3d 870, 878 ¶ 32 (Mont. 2006).  Because Defendant Bender's conduct was reasonable under the circumstances, Plaintiff can show neither breach nor causation against Defendant Howard.  He is entitled to summary judgment insofar

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 13

as Plaintiff alleges negligence under state law.[9]

### C. Assault by Defendant Bender

Regarding Plaintiff's claim that Defendant Bender assaulted him, Bender avers:

> While Mr. Walck was an inmate at the Powell County jail I only recall one incident in which I had physical contact with him. He requested water, which I brought to him. When I opened his cell door, he rushed at me in an apparent effort to either assault me or to escape. I pushed him back into his cell and closed the door. I did not otherwise strike or assault Mr. Walck, and the actions I took were necessary to bring him under control for his own safety and the safety of other inmates and Sheriff's Office personnel.

Bender Aff. at 2, ¶ 6.

Plaintiff concedes in his response that "I cannot prove this attack of Defendant Bender." Pl. Resp. at 4, ¶ 41. In spite of his references to the availability of his wife as a witness on his behalf, see id. ¶ 44, and to a grievance that was read by several people, including his own defense attorney, id. ¶¶ 42-43, he produces no evidence or testimony in support of his claim. While Plaintiff is correct that "something did transpire," id. ¶ 41, there is no probative evidence that Defendant Bender's actions were unreasonable. See Arpin, 261 F.3d at 922. Defendant Bender is entitled to summary judgment.

### D. Assault by Defendant Howard

Sheriff Howard's Affidavit as submitted by the County Defendants is not properly authenticated.[10] Even if the Court considered its contents, it does not show that there are no factual

---

[9] To whatever extent Plaintiff fairly alleged that he was negligently handcuffed in the first place, he now avers that Defendant Miller placed the handcuffs on him, see Pl. Resp. at 3, ¶ 28; Miller Aff. at 2, ¶¶ 1, 5, and Defendant Howard, the Sheriff of Powell County, had no duty to train Defendant Miller, an employee of Montana State Prison.

[10] The affidavit is unauthenticated because Sheriff Howard notarized his own affidavit. See Fed. R. Evid. 902(8) (providing that extrinsic evidence of authenticity is not required as a condition precedent to admissibility if a document is acknowledged "in the manner provided by law"); Mont. Code Ann. § 1-5-416(2)(a) ("A notary public may

issues to be resolved, because it states only that Sheriff Howard did not make the threat Plaintiff alleges.

However, the Court may dismiss a claim brought by a person proceeding in forma pauperis "at any time" if it determines that the allegation fails to state a claim on which relief may be granted. See 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff's response to the County Defendants' motion for summary judgment clarifies the allegations of his Complaint and Supplement and demonstrates that he cannot state a claim on which relief may be granted.

In recommending that Defendants' motion to dismiss be denied, the Court said:

> Although, generally speaking, "it trivializes the [E]ighth [A]mendment to believe a threat constitutes a constitutional wrong," Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (per curiam), Walck points out that the threat here was not made within a prison facility, where the guards typically do not carry firearms, as in Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), and, presumably, in Gaut. This is a close call. However, the closeness of the call is a reason not to dismiss the claim but, instead, to allow the parties to flesh out the circumstances. This claim should not be dismissed.

Findings and Recommendation (doc. 52) at 17-18.

In his response to the County Defendants' motion for summary judgment, Plaintiff says:

> In the early morning hours of November 5th, 2001 an altercation between Plaintiff and the Powell County Deputy Hans Scheuter occurred in my drunk tank which I was maced by the Deputy and had to be what is called decontaminated, cleansed from the mace.
>
> At such time, Defendants Scott Howard, Pat George escorted me to the shower to clean off the mace. During this escort, Sheriff Howard who was armed threatened Plaintiff verbally quote "I should just blow you away" causing great distress to me, this threat was heard and witnessed by Captain/Defendant Pat George.
>
> . . . . Captain George . . . was quite alarmed at his superior[']s threats and

---

not notarize the notary's own signature"). However, "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003).

rage.

Mr. George assur[]ed me he would never deny what he heard Sheriff Howard say to me that morning of November 5th, 2001.

Pl. Resp. at 5, ¶¶ 46-49.

With the circumstances of Defendant Howard's alleged threat thus fleshed out, it is clear that Plaintiff does not state a claim for a constitutional injury. The only matter that has been fleshed out is the fact that the alleged "threat" was made immediately following Plaintiff's serious altercation with a deputy.[11] There is no indication whatsoever that Defendant Howard pointed, cocked, brandished, picked up, touched, gestured toward, mentioned, or looked at his firearm. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1964-65 (2007). Even assuming that Defendant Howard said, "I should just blow you away," and said it in an angry tone, there are no factual allegations supporting Plaintiff's conclusion that Defendant Howard was actually threatening to harm him. The allegations before the Court do nothing to raise Plaintiff's right to relief "above the speculative level." Plaintiff fails to state a claim. The allegation that Defendant Howard threatened Plaintiff should be dismissed with prejudice.

### E. Second Handcuffing

The second alleged handcuffing injury occurred on November 5, 2001, five days after Plaintiff's warrantless arrest. The Court presumes, for the sake of argument, that, by that time, a judge had found probable cause to continue Plaintiff's detention. See Mont. Code Ann. § 46-7-

---

[11] Plaintiff is currently serving a ten-year prison term for assaulting a peace officer on November 5, 2001. See CON Network, http://app.mt.us/conweb (accessed July 26, 2007).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 16

101(1) (2001); County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991) (holding that provision of probable cause hearing within 48 hours of warrantless arrest will generally meet constitutional standards); id. at 68 (Scalia, J., dissenting) (opining that "certainly no more than 24 hours is needed" to provide a probable cause hearing following a warrantless arrest); cf. Compl. at 5 ("the original ... October 31st 2001 charges were all dismissed").  This fact is significant to the legal analysis, as Plaintiff's claim is therefore properly analyzed under the Fourteenth Amendment to the Constitution. The Ninth Circuit has determined that  "the Fourth Amendment sets the applicable constitutional limitations on the treatment of an arrestee detained without a warrant *up until the time* such arrestee is released or found to be legally in custody based upon probable cause for arrest." Pierce, 76 F.3d at 1043 (emphasis added).  So far as this Court is aware, the Ninth Circuit has not decided any case by analyzing under the Fourth Amendment a claim brought by a pretrial detainee, here used to mean someone held on a judicial determination of probable cause.  The Ninth Circuit has analyzed the excessive force claims of pretrial detainees under the Fourteenth Amendment's Due Process Clause. See Redman v. County of San Diego, 942 F.2d 1435, 1440 (9th Cir. 1991) (en banc); White v. Roper, 901 F.2d 1501, 1507 (9th Cir. 1990).  For these reasons, this Court will apply only the substantive due process component of the Fourteenth Amendment, not the Fourth Amendment,[12] to Plaintiff's claim regarding the second handcuffing incident.

---

[12]  Of course, the Fourteenth Amendment's Due Process Clause is the textual basis of the Supreme Court's decisions to make certain provisions of the Bill of Rights "obligatory upon the States." Gideon v. Wainwright, 372 U.S. 335, 342 (1963).  A state prisoner is protected not directly by the Fourth Amendment but by the Fourth Amendment as applied via the Fourteenth.  See Mapp, 367 U.S. at 655.  But the States are required to honor some rights that do not fall within the textual terms of the Bill of Rights.  The temporal gap that arises between search and seizure, as restricted by the terms of the Fourth Amendment, and "punishment," as restricted by the terms of the Eighth Amendment, is one such gap.  The Supreme Court describes that gap as "implicat[ing] only the protection against deprivation of liberty without due process of law." Bell, 441 U.S. at 535.

So far as this Court is aware, the elements of such a claim in the present context are not set forth in a Ninth Circuit case in an exact fashion.  However, the governing principles are clear.  "In determining whether a substantive right protected by the due process clause has been violated, it is necessary to balance the liberty of the individual and the demands of an organized society." Youngberg v. Romeo, 457 U.S. 307, 320 (1982).  On the one hand, "[p]rison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry."  Bell, 441 U.S. at 547.  On the other hand, pretrial detainees have an established right, "once subjected to the normal limitations and conditions that attach to their confinement, to be free from punishment." Redman, 942 F.2d at 1441.  Balancing these two contrary interests requires, first, consideration of whether a pretrial detainee was punished, in this case by the use of excessive force; and second, consideration of whether the defendant had the required degree of culpability.  Cf. Block v. Rutherford, 468 U.S. 576, 584 (1984) (assessing policies applied to pretrial detainees); Lolli, 351 F.3d at 419 (quoting Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002)) (explaining that § 1983 plaintiff must show both "risk of objectively sufficiently serious harm" and "a sufficiently culpable state of mind") (applying Eighth Amendment standard to arrestee's claim alleging inadequate medical care).

"[T]o constitute punishment, the harm or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement." Demery v. Arpaio, 378 F.3d 1020, 1030 (9th Cir. 2004); see also id. at 1029 (stating standard as "whether the policy [or practice] is an excessive response to a legitimate purpose" or penological objective). White gives another pertinent test, stating that courts should consider four factors to determine

whether force is excessive:

> (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, and (4) whether force was applied in a good faith effort to maintain and restore discipline.

White, 901 F.2d at 1507 (citing Gaut v. Sunn, 810 F.2d 923, 924 (9th Cir. 1987) (per curiam), and

Hoptowit v. Ray, 682 F.2d 1237, 1251 (9th Cir. 1982) (both cases involving convicted prisoners)).

These tests constitute the objective element of a claim under the Fourteenth Amendment.

A Fourteenth Amendment violation also incorporates a subjective element. "[T]he purpose of the governmental action must be to punish the detainee." Id. at 1029. Therefore, a pretrial detainee cannot prevail on a claim of excessive force by showing only unreasonable action, or "mere negligence." See Redman, 942 F.2d at 1440. Instead, though he need not show "an express intent to punish," he must show that the defendant had "more than a mere suspicion" that his actions would cause an injury. Id. at 1442 (quoting Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986) (explaining the meaning of "deliberate indifference")).

Plaintiff states that the handcuffs were placed in such a manner that it caused him considerable pain due to his prior forearm injury, and that he notified the officers of his discomfort. Pl. Resp. at 5, ¶54. He also states that Defendant Hoover delayed transport by stopping at the side of the road in order to inspect his arm and the handcuffs as a result of his complaints. Id. at ¶55. Plaintiff claims that after his arrival at the Ravalli County Detention Center, and after the removal of the handcuffs, he lost consciousness due to the pain and swelling in his arm brought about by the cuffing. Id. at ¶ 57. He was then taken to Marcus Daily hospital, where he received medical treatment. Id. at ¶ 59. The (unauthenticated) medical records submitted by Plaintiff reflect that he

was experiencing mild to moderate pain, for which the use of Tylenol or ibuprofen was recommended, and make no reference to any loss of consciousness. Pl. Resp., Exhibit 5.

On the basis of evidence before the court, Plaintiff cannot establish that he was the victim of excessive force on November 5, 2001. There was certainly a legitimate need to apply force by using handcuffs in the transport, particularly since Plaintiff had shown himself to be extremely volatile in his interactions with officers. There is no evidence to suggest that the use of handcuffs was excessive in relation to the purpose for which they were being employed, or that their use was engaged in with bad faith. Plaintiff has provided no evidence to suggest that he suffered any lasting or significant injury as a result of Defendants' conduct. Plaintiff has not made a sufficient showing to establish that his handcuffing  was excessive or brutal under the factors established by <u>White</u>.

Neither has Plaintiff provided evidence sufficient to determine that Defendants were deliberately indifferent to his Fourteenth Amendment rights. Plaintiff's own statements indicate that he was not cuffed in a manner causing him discomfort until the cuffs repositioned themselves an hour into his ride, a fact which undermines any argument that the handcuffing was designed to punish him. Pl. Resp. at ¶ 57. The record does not demonstrate that Defendants had any particular reason to believe that Plaintiff's complaints were sincere, yet Defendants stopped the car and examined Plaintiff's arm and the handcuffs in response to his protests. Id. at ¶ 55. Sufficient evidence does not exist which would enable a trier of fact to determine that Defendants acted with deliberate indifference to the threat Plaintiff would suffer serious harm or injury as a result of the handcuffing, or that the handcuffing was intended to punish him.

Plaintiff cannot demonstrate that County Defendants Howard and George violated his

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 20

Fourteenth Amendment rights, and Defendants are entitled to summary judgment on that claim.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1.  The County Defendants' motion for summary judgment (doc. 82) should be GRANTED in full as to Plaintiff's claim against Defendants Howard, George, Dunkerson, Gray, and Bender.

2.  The MSP Defendants' motion for summary judgment (doc. 86) should be GRANTED in full as to all claims against Defendants Mahoney, Wood, Geach, Beckwith, Clark, Miller, and Moore.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing.  A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge.

Plaintiff must immediately inform the Court of any change in his mailing address.  Failure to do so may result in dismissal of this case without notice to him.

DATED this 26th day of October, 2007.


 /s/ Keith Strong_____
Keith Strong
United States Magistrate Judge

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 21